**John Alfred HEARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–84–854–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 27, 1985.

Michael B. Charleston, Houston, for appellant.

John B. Holmes Jr., Dist. Atty., Dinah Bailey, Donald Davis, Asst. Dist. Attys., Houston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Judge.

The jury rejected appellant's not guilty plea to aggravated robbery and the court assessed punishment at confinement for life. Issues before us concern an objection to the court's charge on parties, the denial of a motion to quash the indictment, a limitation on cross-examination of a witness and the denial of motion to suppress a confession. We affirm.

The sufficiency of the evidence is not challenged. It will be discussed only as is necessary in addressing appellant's claims.

In his first ground of error, appellant contends the court erred in overruling his objection to the court's charge on the law of parties. In defining the law of parties the charge stated:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

In applying the law to the facts, the court authorized the jury to find appellant guilty if they found beyond a reasonable doubt that he, "either acting alone or as a party to an offense as that term has been herein above defined", committed the acts constituting the offense.

■ The trial court permitted appellant's counsel to dictate his objections to the charge to the court reporter. Concerning that portion of the charge on parties, appellant stated: "[t]he defendant further objects to paragraph six of the charge, that being the application of the law to the facts, for failing to set forth all the elements of the law of parties to the facts." The state asserts appellant has not preserved the alleged error for our review because "a requested instruction in writing" was not presented in accordance with Article 36.15, Tex.Code Crim.Proc.Ann. (Vernon Supp.1985). We believe, however, appellant's objection was authorized by Article 36.14 Tex.Code Crim.Proc.Ann. (Vernon Supp.1985).

While we find the objection to the charge preserved error, we still have difficulty in understanding what he was complaining of and, therefore, seriously doubt the objection was specific enough to call the court's attention to his present complaint. It is clear to us that appellant's objection to the charge was based upon the failure of the charge, in applying the law to the facts, to specify *how* one becomes guilty as a party. If this was his objection, then it was without merit because the trial court explained in the two previous paragraphs of the charge how one may be guilty as a party. It was not necessary to repeat it.

In his brief on appeal, appellant argues "it is clear that appellant was guilty only as a party and not as the primary actor." If this was the underlying basis for his objection, it does not appear that the objection distinctly specified the ground of objection as required by Article 36.14.

■ However, even if we held the objection sufficient to preserve the contention now made, we would still find no error. A charge setting out the law of parties to the facts of the case is only required where the defendant, if guilty, is guilty only as a party and not as a primary actor. Failure to so charge, even in that situation, is only reversible error upon a timely and sufficient objection. *Jaycon v. State*, 651 S.W.2d 803 (Tex.Crim.App.1983).

■ Appellant's premise that the evidence shows appellant was guilty only as a party and not as the primary actor is not supported by the record. Appellant's written statement and the testimony of Henley, the accomplice witness, clearly show that appellant, Henley and a third co-defendant, Helms, all agreed to rob and kill the deceased and that all three of them searched the house and garage taking money, a stereo, car titles, tools and two automobiles. However, the statement and testimony show it was appellant who, (1) cut and carried the piece of rope to be used for strangulation to the home of the deceased, (2) placed the rope around the neck of the deceased as he, the deceased, was seated at the table reading his mail, (3) had the deceased on the floor, strangling him before the two co-defendants assisted in holding and strangling the deceased, and (4) drove off in one of the two automobiles. Clearly, this evidence is sufficient to prove that appellant was guilty *both* as the primary actor and as a party. Appellant's first ground is overruled.

■ In his second ground of error appellant contends the trial court erred in failing to grant his motion to quash the indictment because it did not specify the theory of the law of parties that the state would rely upon to convict the appellant. It has long been the rule that it is not necessary to allege in the indictment that the accused acted as a party, or a principal, the term used prior to 1965, in order to convict under that theory. *Pitts v. State,* 569 S.W.2d 898 (Tex.Crim.App.1978). Appellant's second ground is overruled.

■ In his third ground of error appellant contends the trial court erred in failing to grant his motion to quash the indictment because it failed to describe the property alleged. Appellant recognizes the rule is well settled that failure to describe the property in an indictment for aggravated robbery does not render the indictment fundamentally defective. He argues, however, that a motion to quash on this basis changes the rule. We disagree. In *Turner v. State,* 673 S.W.2d 688 (Tex.App.—Texarkana 1984, pet. ref'd), the court held that even in the face of a motion to quash, the indictment was sufficient. We agree and overrule the third ground.

In his fourth ground appellant contends he was denied the right to cross-examine the state's witness, Johnson. When appellant sought to cross-examine the witness before the jury, the court sustained the prosecutor's objection. The testimony sought to be elicited was developed on a bill of exception, as follows: (John Louis Henschel was the deceased.)

Q  On two occasions this afternoon you've testified. Now, I will ask you, then, did you ever learn or do you know whether any of the people that roomed at Mr. John Louis Henschel's home ever abused Mr. Henschel or fought with him? Do you know of those incidences.

A  Yes, sir.

Q  Okay. And did they do so?

A  They had a couple of fights over there.

Q  Did you not tell the members of the Baytown Police Department that they had abused John Louis Henschel?

A  Well, I told them they had a fight.

Q  And, in fact, one of the victims of that fight was one Phillip Froling?

A  Yes, sir.

Q  And that Mr. Froling was a wheelchair victim.

A  Wheelchair and crutches.

Q  And was beaten fairly severely by Mr. Henschel, is that correct?

A  That is what John told me. I never did see him myself.

Q  That is what Henschel told you?

A  Yes.

Q  Okay. Now, do you know the reputation in the neighborhood in which you live of those renters, the people that roomed with Mr. Henschel, you know their reputations for being peaceful and law-abiding or for drug usage?

A  I don't ever recall a case where anybody had to call the police for them to come out to his house for any kind of disturbances going on, but the people that lived in the neighborhood, like my other neighbors, we knew of activity that was going on over there that was dealing with I'd say narcotics.

Q  Okay. You discussed this with your neighbors?

A  We had talked about is, yes, sir.

Q  And this was the reputation of Mr. Henschel or of the people who roomed with him?

A  The people that more or less roomed with him.

Q  And so, the reputation for drug usage of the people that roomed with Mr. Henschel was bad, is that right?

A  I guess. Yeah, you could say that; yes, sir.

In his brief appellant states "[o]bviously the testimony was highly relevant and material to the cause on trial." However, we fail to see that there is any rational relationship or pertinence of this proffered evidence to any provable or controlling fact issue in dispute. Further, it could not, in our opinion, be relevant because it does not make the existence of any fact that is of consequence to the determination of the action more probable or less probable. Appellant's fourth ground is overruled.

■ In his final ground appellant contends the court erred in overruling the motion to suppress his confession because he was illegally arrested. We disagree. Following a hearing on appellant's motion to suppress his confession, the trial court filed extensive findings of fact. The court found beyond a reasonable doubt the following facts pertaining to appellant's arrest:

1. On November the 16th, 1983, Detective Gene R. Parker of the Baytown Police Department participated in the finding of a dead body in Cedar Bayou near Baytown, Texas. By investigation, he determined the identity of the dead body to be that of John Louis Henschel. Such identity was established on November 17th, 1983.

2. Through further investigation Detective Parker learned that a witness, Edgar Tomlinson, had stated that he had over heard a Loma Ray Henley making statements to the son of the said Edgar Tomlinson about being present when John Louis Henschel was killed.

3. Loma Ray Henley was arrested and he made the statement that a person named "Little John" was with him at the time John Louis Henschel was killed.

4. Through further investigation, Detective Parker learned from a Faye Annette Johnson that the person referred to as "Little John" was John Alfred Heard; that she had seen his pen papers and he was from Tuscaloosa, Alabama.

5. Thereafter, Detective Parker learned from a Sargeant Griffin of the Harris County Sheriff's office that Sargeant Griffin had stopped a red and black AMX Javelin driven by John Alfred Heard a few days before.

6. Detective Parker then requested Detective Rex M. Elliot of the Baytown Police Department to call law enforcement authorities in Tuscaloosa, Alabama to determine if there were any outstanding warrants for John Alfred Heard. Detective Elliot reported to Detective Parker that he had ascertained that there were outstanding warrants for the arrest of John Alfred Heard for an offense of receiving stolen property and for violation of parole.

. . . . .

19. This Court further finds that at the time of the arrest of the Defendant, John Alfred Heard, there was an outstanding legal, fugitive warrant for his arrest issued on November 14th, 1983, by Freddie V. Smith, Commissioner, Alabama Board of

Corrections as reflected by State's Exhibit No. 2.

State's Exhibit No. 2, the Fugitive Warrant issued by the Board of Corrections of the State of Alabama, is addressed "To Any Peace Officer" and commands that John Alfred Heard be taken "wherever he may be found for his return to the said State Board of Corrections." The warrant recites the following: On March 30, 1983 appellant was sentenced to imprisonment for two years and two days and was confined until October 17, 1983 when he was paroled. Then on November 8, 1983 the State Parole Board "having reasonable cause to believe that said prisoner ha[d] lapsed or [was] about to lapse, into criminal ways or company or ha[d] violated conditions of his parole in an important respect, ordered said parolee arrested and returned to the confine of the penitentiary to appear before the State Board of Pardons and Paroles who will determine the parole status of said parolee."

Appellant contends his arrest by Texas authorities was not authorized under the Alabama warrant. His argument, as we understand it, is that Texas authorities were relegated to filing a fugitive charge under the provisions of Section 13, Article 51.13, Tex.Code Crim.Proc.Ann. (Vernon 1979) and securing a warrant thereon. We do not agree. Section 13 does not provide the exclusive authority for the arrest of a fugitive. Section 14 authorizes an arrest without warrant "upon reasonable information that the accused stands charged in the courts of the state with a crime punishable by death or imprisonment for a term exceeding one year." Tex.Code Crim.Proc. Ann. Art. 51.13, § 14 (Vernon 1979). Not only was appellant's arrest specifically authorized under this section, but as stated by the United States Supreme Court in *Stallings v. Splain,* 253 U.S. 339, 40 S.Ct. 537, 64 L.Ed. 940 (1920), in passing upon the authority of officers in one jurisdiction to arrest a person in another:

> The original arrest and detention were lawful. A person, duly charged with a felony in one state, may, if he flees to

another, be arrested, without a warrant, by a peace officer in the state in which he is found, and be detained for the reasonable time necessary to enable a requisition to be made. (Citations omitted). The rule is not less liberal where the fugitive stands charged by an indictment found in one federal district and flees to another.

. . . . .

If the bench warrant issued in Wyoming was not effective as a warrant within the District of Columbia, the possession of it did not render illegal an arrest which could lawfully have been made without it. It would, at least, serve as evidence that Splain had reasonable cause to believe that a felony had been committed by Stallings. *Stallings* at 341–342, 40 S.Ct. at 538.

*See also: Morales v. State,* 513 S.W.2d 869 (Tex.Crim.App.1974). Appellant's fifth ground is overruled.

The judgment is affirmed.