COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO.
02-11-00326-CR

 

 

 


 
 
 Ex
 parte Jerome Wall
  
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From
 the 16th District Court
  
 of
 Denton County (F-2010-1802-A)
  
 November
 21, 2012
  
 Opinion
 by Justice Gardner
  
 (nfp)
 
 


 

JUDGMENT

 

         
This court has considered the record on appeal in this case and holds that the
appeal should be dismissed.  It is ordered that the appeal is dismissed
for want of jurisdiction.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

 

 

By_________________________________

   
Justice Anne Gardner

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-11-00326-CR

NO.
02-11-00517-CR

 

 


 
 
 Ex parte Jerome Wall
 
 
  
 
 
  
 
 
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 16th District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

In
these two consolidated appeals, Appellant Jerome Wall challenges two trial
court orders issued after he pleaded guilty to the offense of failure to identify. 
In cause number 02-11-00517-CR, Appellant appeals the trial court’s order
denying relief on his writ of habeas corpus application seeking to avoid
extradition to Mississippi.  See Tex. R. App. P. 31.  We
affirm this order.  In cause number 02-11-00326-CR, Appellant attempts to
appeal the trial court’s order recommending to the court of criminal appeals
that his pro se writ application challenging his confinement and extradition be
dismissed.  See Tex. Code Crim. Proc. Ann. art.
11.07 (West Supp. 2012).  We dismiss this appeal for want of
jurisdiction.

II.  Procedural and Factual Background[2]

Appellant
was arrested in Denton County on May 12, 2010, for fraudulent use or possession
of identifying information and failure to identify.  The next day, the
trial court set bail in each case.  The parties agree that on or about
Appellant’s arrest date, Denton County employees learned that Appellant was an
escapee from Mississippi, and a “no-bond hold” was placed against Appellant on
the escape charge.  The parties dispute the effect and meaning of the
“no-bond hold.”  It is undisputed, however, that
Appellant remained confined.  The record indicates that Appellant did not
attempt to post bond in his two pending Denton County cases.  On August
12, 2010, a Denton County grand jury indicted Appellant on these two charges.

In
October 2010, Appellant filed a pro se application for preconviction
habeas corpus, asserting that he was being illegally confined on the “hold”
issued on the Mississippi offense.  In January 2011, Appellant filed a
petition for writ of mandamus in this court, seeking to compel the trial court
to act on his writ application.[3] 
This court denied Appellant’s requested mandamus relief.  See In
re Wall, No. 02-11-00035-CV, 2011 WL 754410, at *1 (Tex. App.—Fort Worth
Mar. 3, 2011, orig. proceeding) (mem. op.).

On
March 2, 2011, Appellant pleaded guilty to misdemeanor failure to identify, and
the trial court dismissed the remaining charge.  The trial court sentenced
Appellant to 270 days’ incarceration in the Denton County Jail and granted
pretrial incarceration credit of 295 days.  Appellant
remained in jail.[4]
 On March 17, 2011, the trial court determined that probable cause existed
to issue a fugitive warrant.  On March 30, 2011, the trial court appointed
Appellant counsel on his fugitive-from-justice charge.  On May 11, 2011,
the State of Mississippi filed a request for interstate rendition, and on May
13, 2011, Governor Rick Perry issued a Texas Governor’s warrant to extradite
Appellant from Texas to Mississippi.

On
May 27, 2011, Appellant filed a pro se “Application for a Writ of Habeas Corpus
Seeking Relief from Final Felony Conviction Under Code
of Criminal Procedure, Article 11.07,” challenging his confinement and
extradition.  On July 6, 2011, the trial court recommended to the court of
criminal appeals that Appellant’s pro se writ application be dismissed.[5]

On
May 31, 2011, Appellant’s appointed counsel filed an “Original Application for
Pre-Conviction Writ of Habeas Corpus,” challenging the timeliness of the Texas
Governor’s warrant.  The application alleged that

[Appellant] was
arrested and placed in the Denton County Jail on May 12, 2010, and on or about
the same date [Appellant] was “committed” by a Denton County Magistrate to
confinement as an alleged “fugitive from justice” pursuant to Article
51.05.  No warrant from the Governor of Texas authorizing [Appellant’s]
arrest pursuant to Article 51.07 was executed prior to May 13, 2011, almost
exactly a year later.  As a result, under Texas law the Sheriff of Denton
County was compelled to discharge [Appellant] from custody, insofar as his
confinement was authorized by Chapter 51 of the Texas Code of Criminal
Procedure, not later than August 10, 2010.

 

[Appellant] concedes that during the course of his
confinement after May 12, 2010, he remained independently confined (or subject
to release on bond) as the result of two pending charges [to one of which he
pleaded guilty to a lesser included offense] . . . .  In this connection
however, [Appellant] contends that neither his confinement to a sentence to
confinement for violation [sic] of Texas law, nor the pendency of criminal
charges for violation of Texas law, operated to suspend the Denton County
Sheriff’s compliance with Article 51.05 and 51.07 after August 10, 2010.

At
the initially-scheduled July 29, 2011 extradition hearing, Appellant’s
appointed counsel stated that he had filed the May 31, 2011 preconviction
writ application and had provided Appellant a copy.  He further noted,
however, that a few days earlier Appellant had discharged him from this
proceeding and that a trial court clerk had left him a message stating that
Appellant had asked the trial court to discharge his appointed counsel and
appoint him new or standby counsel.  The trial court confirmed that
previously appointed counsel was discharged, appointed Appellant new counsel,
and continued the hearing to a later date.

At
the September 2011 extradition hearing, Appellant’s newly-appointed counsel
filed “Defendant’s Answer to State’s Warrant and Extradition and Motion for
General Habeas Corpus.”  This document incorporated the May 31, 2011 writ
application, reiterated certain facts and arguments, and prayed that the trial
court “find that a ‘systemic right’ was violated when [Appellant] was not
discharged on the 91st day of his Denton County incarceration by the
Denton County Sheriff.”

Also,
at the extradition hearing, the State introduced the Governor’s warrant and
supporting documents.  Appellant’s counsel argued,

[W]ithin the 90 days of the arrest back on May the 12th of
[2010,] no action was taken by the State of Mississippi to initiate their
extradition.  They actually waited until after the State of Texas had
completed its case on the failure to identify a felony case of 2010-1802-A, and
then within the times after that, they started -- that is, Mississippi started
its extradition process.

 

I am also acquainted
with that particular statute that is 51.13 that addresses item number 19. 
It says persons under criminal prosecution in the State of Texas at the time of
extradition.  [sic]  That particular
statute, way I read it, basically says that Denton County had a right to
proceed with [its] case, and then upon completing the case then maybe he can
start another 90 days.  And, of course, the State of Mississippi with the
State’s Exhibit Number 1 indicates within 90 days actually they did go with
their requisition from Mississippi to the Governor and Governor Perry signed
his warrant.

So from that
standpoint, it looks all right.  But our objection is within the first 90
days of the arrest, the State of Mississippi had placed a detainer, which initiated
the Denton County Case, and we are arguing that that 90 days runs from the date
of the arrest.  The guilty plea was entered March the 2nd, 2011, for a
misdemeanor reduction of the particular case.  So for 270 days, this man
has been sitting in the Denton County Jail. . . .

 

[Appellant] had the right to proceed on a 90-day
assumption.  It’s stated in the statute.  The statute is exceedingly
clear, and that’s the Code of Criminal Procedure, Article Number 51.07, it says
expiration of 90 days from the date of commitment.  The date shall be
discharged at the expiration of 90 days.  It’s a very specific statute.

After
both sides presented their cases, the trial court denied relief on Appellant’s
writ application, thereby granting extradition to the State of Mississippi.[6]

On
July 28, 2011, Appellant filed a pro se notice of appeal regarding the trial
court’s recommendation to the court of criminal appeals that his May 2011 pro
se application for writ of habeas corpus be dismissed.  On September 19,
2011, Appellant’s appointed appellate counsel filed a notice of appeal
regarding the trial court’s judgment ordering extradition to the State of
Mississippi and denial of habeas corpus.  We consolidated these two
appeals.  Appellant’s appointed attorney filed a brief, as did the State.

After
these appeals were submitted, Appellant filed a pro se motion to supplement the
record and a motion for leave to file an amended brief and supplement the
record.  The State filed a motion for leave to file an amended brief and a
motion for leave to supplement the record.  The State also filed a motion
for leave to supplement appendix A to the State’s amended brief.  We have
previously granted the parties’ requests to file additional briefs (excluding
any attached exhibits or appendices), see Tex. R. App. P. 38.7, but
waited until issuing this opinion to address the parties’ requests to
supplement the appellate record.

We
deny the parties’ requests to supplement the appellate record, for the reasons
set out below in the opinion.  We have liberally construed Appellant’s pro
se “amended brief” as a supplemental brief, and we have considered it, along
with Appellant’s initial brief filed by counsel and the State’s amended brief.[7]

III.  Order Denying Writ
Application Seeking to Avoid Extradition

In
cause number 02-11-00517-CR, Appellant appeals “the judgment of the trial court
ordering extradition to the State of Mississippi and denial of habeas corpus.”

A. 
Applicable Law

We
review the trial court’s decision to deny habeas corpus relief for an abuse of
discretion.[8] 
Kniatt v. State, 206 S.W.3d 657, 664 (Tex. Crim. App.), cert. denied, 549
U.S. 1052 (2006).  Appellant bears the burden to prove he is entitled to
the relief he seeks by a preponderance of the evidence.  Id.

Article
IV, Section 2 of the United States Constitution establishes the basis for
extradition of fugitives between states.  U.S. Const. art. IV, § 2, cl. 2.  The Extradition Clause is
implemented by the Uniform Criminal Extradition Act, which has been adopted by
Texas.  See Tex. Code Crim. Proc. Ann. art. 51.13
(West 2006); Ex parte Potter, 21 S.W.3d 290,
293 n.3 (Tex. Crim. App. 2000).

Extradition
proceedings are limited in scope in order to facilitate a swift and efficient
transfer of custody to the demanding state.[9]  Ex parte Potter, 21 S.W.3d at 294.  Once the governor of an asylum state
grants extradition, a court considering release on habeas corpus can consider
only (1) whether the extradition documents on their face are in order; (2)
whether appellant has been charged with a crime in the demanding state; (3)
whether appellant is the same person named in the extradition request; and (4)
whether appellant is a fugitive.  Id. (citing Michigan v. Doran,
439 U.S. 282, 289, 99 S. Ct. 530, 535 (1978)); Ex parte Lekavich,
145 S.W.3d at 700.  The issuance of a valid
Governor’s warrant renders moot any complaint arising from confinement under a
fugitive warrant, including detention in excess of the statutory period.  Ex
parte Worden, 502 S.W.2d at 805; see Echols v.
State, 810 S.W.2d 430, 431 (Tex. App.—Houston
[14th Dist.] 1991, no pet.).[10]

B. 
Analysis

Appellant
does not challenge the validity of the Governor’s warrant.[11] Instead, he asserts that “[t]he trial
court erred in not following the clear dictates of Texas Code of Criminal
Procedure 51.05 and 51.07 as [Appellant] had been detained in excess of ninety
days without the issuance of the required Governor’s warrant.”  See Tex.
Code Crim. Proc. Ann. arts. 51.05 (West 2006),[12] 51.07 (West 2006),[13] art. 51.13, §§ 15, 17.[14]

1. 
Mootness and Appealability of Appellant’s Issues

Without
discussing the holding in Ex parte Worden—that the issuance of a valid
Governor’s warrant renders moot any complaint arising from confinement under a
fugitive warrant—Appellant suggests that this court should address his illegal
confinement allegations because the trial court failed to hold hearings on his
“numerous applications for writs of habeas corpus” filed before the Governor’s
warrant was issued.  In support, Appellant cites generally to articles
11.10,[15]
11.11,[16]
51.05, and 51.07.  See Tex. Code Crim. Proc. Ann. arts. 11.10–.11 (West 2005), arts. 51.05,
51.07.  Citing Ex parte Werne, he
asserts that his “liberty rights” were violated and that a constitutional harm
analysis demonstrates reversible error.  118 S.W.3d 833, 837 (Tex. App.—Texarkana 2003, no pet.). 
A brief discussion of Werne is necessary.

Werne was
arrested on local charges on September 2, 2002, and he satisfied his jail
sentences by mid-September.  Id. at 835. 
Werne remained in jail, however, on a fugitive
warrant issued by the State of Mississippi.  On November 12, 2002, Werne filed a writ application (“first application”). 
At a January 15, 2003 hearing on this application, the trial court released Werne on bond.  Id.  Meanwhile, Governor
Perry issued a Governor’s warrant, and Werne was
rearrested.  Id.  Werne then filed a
second writ application.  Id.  At the writ hearing, the trial
court found that Werne had been illegally detained
from December 2002 until January 2003, but concluded that the illegal detention
did not taint the efficacy of the Governor’s warrant.  Id.  In
appealing the denial of his requested relief on the second application, Werne argued that the trial court’s two-month delay in
holding a hearing on his first application constituted an unconstitutional
infringement on his liberty which could not be rendered acceptable by an
untimely Governor’s warrant.  Id. at 836–37. 
The appellate court did not agree and held that the “existence of error on the
First Application does not, however, resolve the issue presented in the case
now before us-whether the trial court erred in denying Werne’s
Second Application.”  Id. at 836. 
The appellate court noted:

We will not declare that there is no instance
in which such an error might be so great as to fatally corrupt a later
proceeding. 
In this case, however, we do not so conclude.  The error was ultimately
rectified, although at the cost of six unnecessary weeks in jail for Werne.  That error, however, has not contaminated the
present proceeding, which involves a proper Governor’s warrant and arrest
pursuant to that warrant.

Id. at
837 (emphasis added) (citation omitted).  The appellate court then stated
that even if it were to find it proper to fully merge these two proceedings and
apply the rule controlling our review of harm resulting from constitutional
error, it would not find reversible error.  Id.

We
are not persuaded to depart from Ex parte Worden in this case, and we
hold that the issuance of the valid Governor’s warrant rendered moot Appellant’s
complaint that he was illegally detained on a fugitive warrant in excess of
ninety days without the issuance of the required Governor’s warrant.  To
the extent there hypothetically could be circumstances when “an error might be
so great as to fatally corrupt a later proceeding,”[17] that is not the situation here.  In
the interests of justice, however, we explain our determination that no error
occurred in the instant case and that no harm analysis is necessary.

2. 
Timeliness of the Governor’s Warrant

The
parties agree that on or about Appellant’s May 12, 2010 arrest date officials
placed a “no-bond hold” or a detainer on him, however, they disagree on the
meaning and effect of the hold.[18] 
Appellant contends that the “no-bond hold” constituted or had the effect of a
fugitive warrant; thus, because a Governor’s warrant was not issued within
ninety days of the approximate May 12, 2010 “no-bond hold,” he has been
illegally confined since August 10, 2010.

Citing
Lanz, the State distinguishes a “no-bond hold”
from a fugitive warrant and asserts that Denton County merely placed a “no-bond
hold” against Appellant with regard to the Mississippi offense, which did not
take effect (at least until March 3, 2011, when Appellant pleaded guilty and
completed his sentence) because he never attempted to post bail on the local
charges.  See 815 S.W.2d
at 253.

Lanz was
arrested in November 1990 on both a burglary charge and a fugitive
warrant.  The fugitive warrant was dismissed two days later and a
“detainer” was placed on Lanz pending the disposition
of the local charges.  Id.  Lanz
filed an application for writ of habeas corpus, and evidence at the March 1991
writ hearing showed that he had not been indicted for burglary and that a
Governor’s warrant had not been issued.  Id.  At the time of
the hearing, the sheriff’s department issued another fugitive warrant based on
the same underlying facts.  Id.  The trial court placed Lanz on bond for the burglary offense and denied his writ
application regarding the fugitive warrant.  On appeal, Lanz argued that as of the March hearing, he had been held
in excess of ninety days and should have been discharged under articles 51.05,
51.07, and 51.13, sections 15 and 17 of the code of criminal procedure. 
Tex. Code Crim. Proc. Ann. arts. 51.05, 51.07, art. 51.13, §§ 15, 17.

In
reversing the trial court, the court of appeals held that the sheriff’s
department had violated the relevant time restraints because “abuses might well
arise if the ninety day commitment period could be renewed by the mere
dismissal of a fugitive warrant and its subsequent reissuance.”  Lanz, 815 S.W.2d at 254. The appellate court also noted, however, that “it could
well be another matter if the demanding state’s communication is held in
abeyance and a detainer is lodged notifying the local law enforcement authority
of the state’s request,” noting testimony from a sergeant with the local
sheriff’s department that

a detainer is a local form placed in an
inmate’s file by the sheriff’s department.  This form serves as a reminder
to the booking officers that there is an outstanding charge against an inmate
in the event he is released upon the charge that is holding him in the
jail.  The detainer is an administrative notation of the sheriff’s office
and is not presented to a magistrate for judicial oversight.

Id. at
253.

This
language in Lanz supports the State’s argument
that while the Denton County charges were pending, a “no-bond hold” was placed
against Appellant, which was simply an informal reminder that there was an
outstanding charge against Appellant in the event he was released on the local
charges holding him in the jail.[19] 
Indeed, Appellant was originally incarcerated based on Denton County charges,
and the record indicates that a fugitive warrant was issued on March 17, 2011,
once the local charges and sentence were satisfied.[20]  The March 17 fugitive warrant
initiated the time constraints mandated under article 51.

Appellant asserts that his confinement on local charges did
not suspend the ninety-day time requirements under articles 51.05 and 51.07,
asserting that these two articles do not recognize an exception.  However,
the record indicates that Appellant was not arrested on a fugitive warrant
until March 17, 2011.  See Tex. Code Crim. Proc. Ann. art. 51.05 (individual arrested pursuant to a
fugitive warrant shall not be committed or held to bail for longer than 90
days).  Appellant was not illegally detained from May 12, 2010 until March
2, 2011, because Denton County officials were detaining him on local
charges.  See Ex parte Froman, No.
14-02-00450-CR, 2002 WL 31319456, at *3 (Tex. App.—Houston [14th Dist.] Oct. 17, 2002, no pet.) (not
designated for publication) (overruling claim
regarding two-and-one-half-year delay between fugitive and Governor’s warrants,
noting that for two of those years appellant was being held under a local charge
and conviction and not on the fugitive warrant); see also Ex parte Logan,
2011 WL 989066, at *1–2 (holding that the issuance of a valid Governor’s
warrant rendered moot appellant’s complaint regarding his four-year confinement
under a fugitive warrant, noting that appellant had been simultaneously
detained on local charges).

Appellant
also asserts that from March 2, 2011 (when he pleaded guilty), until March 17,
2011 (when the fugitive warrant was issued), he was “held in the Denton County
Jail without Warrant and without any charge whatsoever.”  The State
contends that Appellant remained incarcerated after the completion of his
sentence pursuant to article 51.13, section 14, which provides,

The arrest of a person may be lawfully made . . . without
a warrant upon reasonable information that the accused stands charged in the
courts of a State . . . but when so arrested the accused must be taken before
a judge or magistrate with all practicable speed and complaint must be made
against him under oath setting forth the ground for the arrest . . . .

Tex.
Code Crim. Proc. Ann. art. 51.13, § 14 (emphasis
added).  Notably, in addition to evidence that a fugitive warrant was
issued on March 17, 2011, Appellant acknowledges that he was taken before the
trial court that same day, which was fifteen days after the completion of his
sentence on the local charge.  We conclude that under the facts of this
case, fifteen days was not an unreasonable amount of time for the fugitive
warrant to be issued.  See id.; Heard v. State, 701 S.W.2d 298, 302 (Tex. App.—Houston [14th Dist.] 1985, pet. ref’d); see also Hill v. State, Nos. 03-01-00232-CR,
03-01-00233-CR, 2003 WL 22508201, at *2 (Tex. App.—Austin Nov. 6, 2003, pet. ref’d) (mem. op., not designated
for publication) (citing Heard), cert. denied, 544 U.S. 1060
(2005).  Thus, the Governor’s warrant was timely issued on May 13, 2011,
fifty-seven days after the fugitive warrant was issued.[21]  To the extent that it could be
argued that the “no-bond hold” acted like a fugitive warrant as soon as
Appellant satisfied the local charges on March 2, 2011, the Governor’s warrant
was still timely issued within seventy-two days.  See Tex. Code
Crim. Proc. Ann. art. 51.13, §§ 15, 17.

3. 
Preconviction Writ Application

Appellant
also asserts that the trial court reversibly erred in failing to conduct a
hearing on his pro se preconviction October 7, 2010
writ application, in which he complained that he was being unlawfully confined
without bail on the “no-bond hold.”[22] 
See Tex. Code Crim. Proc. Ann. arts. 11.10–.11.[23]  The record indicates that the
trial court neither issued a writ on this application nor considered and
resolved its merits.[24]
 There is no right to appeal from the trial court’s refusal to issue a
writ of habeas corpus when the trial court did not consider and resolve the
merits of the application.  See Ex parte Hargett, 819 S.W.2d 866, 869
(Tex. Crim. App. 1991); Ex parte Lewis, 196 S.W.3d
404, 405 (Tex. App.―Fort Worth 2006, no pet.).  Because the
trial court did not consider and resolve the merits of Appellant’s October 7,
2010 habeas corpus application,[25]
this court does not have jurisdiction over this subissue;
and accordingly, we dismiss this subissue summarily
under Ex parte Hargett.  See 819 S.W.2d at 869.

4.
 Conclusion

Having
overruled Appellant’s dispositive issues, we affirm the trial court’s order
denying Appellant relief on his writ of habeas corpus application seeking to
avoid extradition to Mississippi that was litigated at the September 16, 2011
extradition hearing.

IV.  Order Recommending Dismissal of Postconviction
Writ Application

In
cause number 02-11-00326-CR, Appellant filed a pro se notice of appeal
regarding the trial court’s recommendation to the court of criminal appeals
that his May 2011 pro se postconviction application
for writ of habeas corpus be dismissed.  We dismiss this appeal for want
of jurisdiction.

On
March 30, 2011, the trial court appointed Appellant counsel to challenge his
fugitive-from-justice charge.  In April 2011, Appellant asked the trial
court to dismiss his attorney and requested to proceed
pro se.[26] 
Shortly after the May 13, 2011 Governor’s warrant was issued, the trial court
appointed Appellant new counsel.  Around the same time (unbeknownst to
newly-appointed counsel), Appellant filed an 11.07 writ application on the
prescribed form.[27] 
Appellant submitted eight claims, challenging several aspects of his
confinement and the extradition proceedings.[28]

In
its answer, the State explained that the issues Appellant raised
in his 11.07 postconviction writ application “[did]
not stem from either a misdemeanor or felony conviction, but rather from his
incarceration pursuant to a Governor’s Warrant for extradition,” and therefore,
his application should be dismissed.  See Tex. Code Crim. Proc.
Ann. art. 11.07, § 1.  (“This article establishes
the procedures for an application for writ of habeas corpus in which the
applicant seeks relief from a felony judgment imposing a penalty other than
death.”).  The State emphasized that Appellant’s appointed counsel had
almost simultaneously filed a writ application, which similarly challenged
Appellant’s “continued confinement and extradition to the State of Mississippi.”

In a
signed, written order, the trial court adopted the State’s proposed findings of
facts and conclusions of law,[29]
and recommended to the court of criminal appeals that Appellant’s pro se writ
application be dismissed.  See id. art. 11.07, §§
3, 5 (providing that the trial court makes recommendations to the court of
criminal appeals, which grants or denies relief).  Appellant
challenged this order by filing a notice of appeal in this court.  In the
meantime, as required under article 11.07, the clerk of the court transmitted
Appellant’s application and the trial court’s order to the court of criminal
appeals.  See id.
art. 11.07, § 3.  The court of
criminal appeals dismissed Appellant’s writ application without written
order.  See id. art. 11.07, § 5.

Intermediate appellate courts do not have jurisdiction in
article 11.07 postconviction habeas matters.  See
id. art. 11.07, § 3
(requiring postconviction applications for writ of
habeas corpus in non-death-penalty felony cases to be filed in court of
original conviction and made returnable to court of criminal appeals); Ex
parte Martinez, 175 S.W.3d 510, 512–13 (Tex.
App.—Texarkana 2005, orig. proceeding); In re McAfee, 53 S.W.3d 715, 718 (Tex. App.—Houston [1st Dist.] 2001, orig.
proceeding); see also Ex parte Garcia, 353 S.W.3d
785, 787 (Tex. Crim. App. 2011) (holding that the court of criminal appeals is
the ultimate finder of fact in article 11.07 habeas cases).  Thus, as a
procedural matter, the trial court’s order is not appealable, and we dismiss
this appeal for want of jurisdiction.  See Tex. R. App. P. 26.2(a)(1),[30]
43.2(f).

Even if we had jurisdiction, the trial court’s order is not
subject to appellate review.  To the extent we must look at the substance
of the order and the underlying pleadings,[31] the thrust of Appellant’s argument was
to challenge his extradition.  The trial court was not required, however,
to rule on Appellant’s pro se filing to the extent it complained about the
extradition because the court had already appointed counsel to represent
Appellant in that matter.  See Robinson v. State, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (holding that a
trial court has no duty to rule on a pro se motion filed by an accused
represented by counsel); Patrick v. State, 906 S.W.2d
481, 498 (Tex. Crim. App. 1995) (holding that an appellant has no right to
hybrid representation), cert. denied, 517 U.S. 1106 (1996). 
Indeed, the trial court did not enter a “final” reviewable order but instead
simply recommended to the court of criminal appeals that the application be
dismissed.[32] 
See Robinson, 240 S.W.3d at
922 (holding that a trial court’s decision not to rule on a pro se motion would
not be subject to review, however, if the trial court chooses to rule, this
ruling is reviewable).  For this additional reason, the trial
court’s order is not subject to review.

 Moreover, as anticipated by the trial court,
Appellant’s relevant concerns regarding his extradition (as set out in his May
27, 2011 pro se writ application) were litigated by way of his appointed
counsel’s application and arguments at the extradition hearing.[33]  To the extent the substance of
Appellant’s pro se pleading relates to his extradition proceedings, we have
already thoroughly considered these issues in Appellant’s companion appeal, set
out above.  Therefore, even if the substantive issues in Appellant’s postconviction writ application were appealable, they would
be moot by virtue of the trial court’s ruling on the May 31, 2011 writ
application that was litigated at the September 2011 extradition hearing.

V. 
Conclusion

We
affirm the trial court’s order denying Appellant’s writ application seeking to
avoid extradition in cause number 02-11-00517-CR.  We dismiss the appeal
in cause number 02-11-00326-CR for want of jurisdiction.  We deny the
parties’ pending motions, each of which is addressed in the opinion.[34]

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November
21, 2012














[1]See
Tex. R. App. P. 47.4.





[2]Throughout
the opinion, we refer to “petition” and “application” interchangeably.





[3]As
discussed later in the opinion, it appears that the trial court did not
consider and resolve the merits of this habeas application.





[4]The
parties’ arguments regarding Appellant’s continued incarceration are set out
later in the opinion.





[5]As
discussed later in the opinion, the court of criminal appeals dismissed
Appellant’s writ application on September 7, 2011.





[6]The
trial court stated in part,

[I] reviewed the Court’s file in the original -- the Texas
charge, and it does not appear that he ever posted bond on this matter, and so
the hold from Mississippi wasn’t effective.  I will find it didn’t take
place until he completed his sentence here in Texas.  And that’s when the
90 days began to run.

I’m going to deny [Appellant’s] request.  Find
that he is the person named in the State of Mississippi’s warrant and in their
packet and in the State of Texas Governor’s Warrant.





[7]Appellant
is not entitled to hybrid representation, see Ex parte Bohannan,
350 S.W.3d 116, 116 n.1
(Tex. Crim. App. 2011); however, due to procedural considerations in these
companion appeals, we have considered Appellant’s pro se brief to the extent
the arguments were relevant to the resolution of the issues.





[8]Generally,
the trial court’s ruling should be upheld if it is supported by the record and
is correct under any theory of the law applicable to the case.  Mahaffey v. State, 316 S.W.3d 633,
637 (Tex. Crim. App. 2010).





[9]The filing of a
Governor’s warrant and its supporting papers constitutes a prima facie case
authorizing extradition.  Ex parte Worden, 502 S.W.2d 803, 805 (Tex. Crim. App. 1973); Ex parte Lekavich, 145 S.W.3d 699, 701
(Tex. App.—Fort Worth 2004, no pet.).  The burden then shifts to
the petitioner to show the illegality of his arrest.  Ex parte Lekavich, 145 S.W.3d at 701.





[10]See
also, Ex parte Logan, No. 05-10-01354-CR, 2011 WL 989066, at *2
(Tex. App.—Dallas Mar. 22, 2011, no pet.) (not
designated for publication); Ex parte Steadman, No. 04-04-00188-CR, 2004
WL 1835959, at *1 (Tex. App.—San Antonio Aug. 18, 2004, no pet.) (mem. op., not designated for
publication); Ex parte Chavez, No. 13-03-00692-CR, 2004 WL 1834459, at
*1 (Tex. App.—Corpus Christi Aug. 12, 2004, no pet.) (mem. op., not designated for
publication).





[11]The
closest Appellant comes to raising one of the four permissible
challenges is his assertion that “the State of Mississippi has never at any
time claimed that [he] is charged with Escape.”  However, the March 2011
sworn affidavit of the Deputy Commissioner of Institutions/MSP
Superintendent of the Mississippi Department of Corrections provides that
Appellant was sentenced to life without parole for the possession of a
controlled substance on September 12, 1996; that on August 15, 2006, he escaped
from a county correctional facility; and that he is wanted by the Mississippi
Department of Corrections for the remainder of his sentence.





[12]Article
51.05 outlines the procedure for issuing a fugitive warrant and provides that
an individual arrested pursuant to such a warrant shall not be committed or
held to bail for longer than ninety days.  See Tex. Code Crim.
Proc. Ann. art. 51.05; see also Lanz
v. State, 815 S.W.2d 252, 253 (Tex. App.—El Paso
1991, no pet.).





[13]Article
51.07 provides that a fugitive who is not arrested under a warrant from the
governor of this state before the expiration of ninety days from the date of
his commitment shall be discharged.  See Tex. Code Crim. Proc. Ann.
art. 51.07; see also Lanz,
815 S.W.2d at 253.





[14]Article
51.13 adopts the Uniform Criminal Extradition Act and sets out the procedure
for returning fugitives to the requesting states.  See Ex parte Potter,
21 S.W.3d at 294.  Sections 15 and 17 of article
51.13 provide a thirty-day commitment period to obtain the Governor’s warrant,
which can be renewed for another sixty days.  See Tex. Code Crim.
Proc. Ann. art. 51.13, §§ 15, 17; see also Lanz, 815 S.W.2d at 253.





[15]Article
11.10 provides in part that “[w]hen motion has been made to a judge under
[either article 11.08 or 11.09], he shall appoint a time when he will examine
the cause of the applicant, and issue the writ returnable at that time, in the
county where the offense is charged in the indictment or information to have
been committed.”  Tex. Code Crim. Proc. Ann. art. 11.10.





[16]Article
11.11 provides, “The time so appointed shall be the earliest day which the
judge can devote to hearing the cause of the applicant.”  Id. art. 11.11.





[17]Arguably,
the italicized language above constitutes dicta. See
Ex parte Logan, 2011 WL 989066, at *2.





[18]Appellant’s
first request and the State’s two requests to supplement the appellate record
pertained primarily to the “no-bond hold” placed against Appellant on the
escape charge.  We deny these requests as moot because the parties rely on
the documents attached to their requests to show that a “no-bond hold” was
placed on Appellant after he was arrested, but the parties agree on this
fact.  Also, the parties have not established that it would be appropriate
to supplement the appellate record with these documents.  See Tex.
R. App. P. 34.5(c)(1), 34.6(d); Solomon v. State,
49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (holding
that supplementation rules cannot be used to create a new appellate record); see
also Amador v. State, 221 S.W.3d 666, 674–77
(Tex. Crim. App. 2007).  We also deny as moot the State’s request to
supplement appendix A to its amended brief because the proffered document is
already part of the appellate record.





[19]Appellant
did not attempt to post bond on the local charges, and we do not speculate on
how an attempt to do so would have affected the process.





[20]A
document in the clerk’s record dated March 17, 2011, contains (1) a sheriff
deputy’s request that a fugitive from justice warrant be issued for Appellant
pursuant to articles 51.03 and 51.04 of the code of criminal procedure and (2)
a magistrate’s determination of probable cause to issue the warrant.  See
Tex. Code Crim. Proc. Ann. arts. 51.03, .04 (West 2006). 
Appellant acknowledges on appeal that he was “taken before the Judge” on March
17, 2011.





[21]Article
51.13, sections 15 and 17 provide a thirty-day commitment period to obtain the
Governor’s warrant, which period can be renewed for another sixty days.  See
Tex. Code Crim. Proc. Ann. art. 51.13, §§ 15, 17; see
also Lanz, 815 S.W.2d
at 253.





[22]Appellant
requested that we supplement the record with a certified receipt signed by an
employee of the District Clerk’s office to show that the Clerk’s office
received his application.  Because we do not have jurisdiction over this subissue, we deny this request as moot.  We note that
Appellant also attached several other documents to his reply brief without
specifically requesting that they become part of the appellate record.  We
did not consider these documents, and we deny as moot any arguable request to
include them as part of the record.





[23]Generally,
a district judge receiving a habeas petition “shall appoint a time when he will
examine the cause of the applicant, and issue the writ returnable at that
time”; “[t]he time so appointed shall be the earliest day which the judge can
devote to hearing the cause of the applicant.”  See Tex. Code Crim.
Proc. Ann. arts. 11.05 (West 2005), .10, .11, .15 (West
2005).





[24]While
as a general rule, a district court receiving a habeas petition “shall” issue
the writ (as opposed to granting relief) “without delay,” a district court can
properly refuse to issue the writ if “it be manifest from the petition itself,
or some documents annexed to it, that the party is entitled to no relief
whatever.”  See id. arts. 11.05, .15.  In this regard, the State argues on
appeal that Appellant’s pro se preconviction October
2010 habeas petition was premature because he was being lawfully held pursuant
to local charges at that time.





[25]The
same substantive complaint was raised in subsequent applications that were
addressed by the trial court at the extradition hearing.





[26]Appellant
had previously filed a pro se writ application in the trial court on April 5,
2011.  The Denton County Clerk did not file the application but instead
sent Appellant a form letter stating, “If you were intending on filing an 11.07
Application for Writ of Habeas Corpus, it will need to be on the proper
form.  If you do not have access to the form we can provide you with
one.”  Appellant then requested from the clerk “the forms necessary to
properly file an Application for Writ of Habeas Corpus, in accordance with
Texas Code and Criminal Procedure Article 51.13 Section 10, Uniform Criminal Extradition
Act.”  It appears from Appellant’s subsequent filing that the clerk sent
him the 11.07 writ application form.





[27]The
appellate rules require that an 11.07 postconviction
writ application be made in the form prescribed by the court of criminal
appeals.  See Tex. R. App. P. 73.1(a).





[28]Appellant
raised the following grounds: (1) “Governor’s Warrant has not been issued
before the 90 days allowed for issuance,” (2) “It is a Fifth Amendment
Violation to use Relator’s Identity to link him to an Escape,” (3) “Relator has
been rendered Ineffective Assistance of Counsel in Extradition Proceedings,”
(4) “No lawful Extradition can take place, being that, Relator was released by
Demanding State and did not Escape,” (5) “Trial Court erred in holding that
Trial Court could only rule on whether Relator is in fact the person so charged
in Extradition Proceedings,” (6) “Failure to afford Relator his Right to be
fully heard was prejudicial,” (7) “Denton County Sheriff’s Department
erroneously placed Hold on Relator,” and (8) “Extradition papers are not in
compliance with law.”





[29]One
of the proposed conclusions of law included,

Because [Appellant’s] issues raised in
his application for postconviction relief do not stem
from either a misdemeanor or felony conviction, but rather from his continued
incarceration pursuant to a Governor’s Warrant for extradition, an application
for postconviction writ of habeas corpus before the
Texas Court of Criminal Appeals is an improper venue for recourse, and
[Appellant] should proceed on his motion for habeas relief [filed by appointed
counsel] on May 31, 2011.





[30]To
perfect an appeal, a defendant in a criminal case must file a notice of appeal
“within 30 days after . . . the day the trial court enters an appealable
order.”  Id.  (emphasis added).





[31]See
Ex parte Caldwell, 58 S.W.3d 127, 130 (Tex.
Crim. App. 2000) (“[I]t is the substance of the motion that governs, not the
title.”).





[32]Indeed,
the trial court instructed (via its conclusions in support of its order) that
Appellant should proceed on his application for habeas relief filed by
appointed counsel.





[33]In
fact, the application filed by Appellant’s appointed counsel contained
Appellant’s declaration, which stated that Appellant “read the foregoing
document to be filed on [his] behalf, entitled ‘Original Application for
Pre-Conviction Writ of Habeas Corpus.’”





[34]We
deny Appellant’s motion to abate and remand these appellate cause numbers for a
“full and fair hearing.”